IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00272-MEH

NEW BELGIUM BREWING COMPANY, INC.,

    Plaintiff,

v.

TRAVIS COUNTY BREWING COMPANY, LLC, d/b/a Oasis Texas Brewing Co.,

    Defendant.

_____

**ORDER ON MOTION TO DISMISS**
_____

Before the Court is Defendant's Motion to Dismiss or, Alternatively, to Transfer Venue [filed March 27, 2015; docket #15]. The matter is fully briefed, and the Court finds oral argument would not materially assist the Court in its adjudication of the motion. For the reasons that follow, the Court **grants** the motion to dismiss and **denies** the alternative request to transfer venue.

## BACKGROUND

### I. Procedural History

Plaintiff, New Belgium Brewing Company, Inc. ("New Belgium"), initiated this action against Defendant, Travis County Brewing Co., d/b/a Oasis Texas Brewing Co. ("TCBC"), a Texas corporation, on February 9, 2015 seeking a declaration that New Belgium is the sole owner of the SLOW RIDE trademark in connection with its beer. Complaint, docket #1.

TCBC filed the present Motion to Dismiss or, alternatively, to Transfer Venue on March 27, 2015, arguing that New Belgium's Complaint should be dismissed for failure to plead adequate personal jurisdiction or, in the alternative, the Court should transfer the case to the Western District of Texas. TCBC argues that it has virtually no contacts with the State of Colorado, and that New

Belgium has failed to demonstrate specific personal jurisdiction over it. Further, even if minimum contacts are established, TCBC asserts the exercise of jurisdiction over it would be unreasonable pursuant to governing law. Finally, TCBC contends that the alternative remedy would be to transfer venue of the case to Texas.

New Belgium counters that TCBC's cease-and-desist letters (in which TCBC referred to the extent of its trademark rights nationwide, including Colorado), its oral communications with New Belgium, and its participation at a beer festival in Colorado demonstrate sufficient minimum contacts with Colorado from which this litigation arose. New Belgium also argues that this Court's jurisdiction over TCBC does not offend traditional notions of justice and fair play. Finally, New Belgium contends that TCBC has failed to show a change of venue is proper.

TCBC replies that the letters and its participation at the festival are too attenuated and irregular to suffice as minimum contacts under prevailing law. With its brief, TCBC filed a Disclaimer of Rights in Colorado "in an effort to dispel New Belgium's apparent concern over the breadth of the two letters and clarify defendant's position."

**II.     Statement of Facts**

The following are factual allegations made by New Belgium in its Complaint and offered by TCBC for jurisdictional analysis.

1.     New Belgium is a Colorado corporation with its principal place of business at 500 Linden Street, Fort Collins, Colorado 80524.

2.     TCBC is a Texas limited liability company doing business as Oasis Texas Brewing Company at 600 Comanche Trail, Austin, Texas 78732.

3.     From October 2-4, 2014, TCBC representatives attended the Great American Beer Festival,

held at the Colorado Convention Center in Denver, Colorado. Defendant registered as a brewery for the festival under its name "Oasis," and was assigned booth number M28 during the show. On the TCBC Facebook page, Defendant posted pictures of its booth at the Colorado Convention Center, dating the picture October 4, 2014. According to the Great American Beer Festival website, Defendant was awarded a "gold medal" in "Category: 59 Ordinary or Special Bitter" during the festival for its "London Homesick Ale" beer.

4.      After New Belgium had filed to register the mark SLOW RIDE, it learned of the existence of TCBC in Austin, Texas and its claim to offering a beer under the name "Slow Ride."

5.      In the fall of 2014, the Chief Executive Officer of New Belgium, Kim Jordan, contacted a representative of TCBC to discuss New Belgium's rights to the SLOW RIDE mark and TCBC's use of the mark. That discussion did not resolve any issues between the parties.

6.      Shortly thereafter, on October 16, 2014, counsel for TCBC sent a cease-and-desist letter to New Belgium, addressed to Ms. Jordan. In the letter, TCBC claimed that New Belgium infringes on TCBC's alleged trademark rights in "Slow Ride" and demanded that New Belgium cease and desist all further use of the SLOW RIDE mark, destroy all materials bearing the SLOW RIDE mark, and provide TCBC with revenue and profit information related to New Belgium's use of the SLOW RIDE mark. TCBC also asserted that it "heavily markets SLOW RIDE nationwide through the Oasis Brewing Company website ..., beer festival competitions, and other activities. TCBC thus currently uses the mark SLOW RIDE not only in Texas, but across the United States." Docket #1-3.

7.      Counsel for New Belgium responded to TCBC's letter by a letter dated November 10, 2014, in which New Belgium explained its history with the SLOW RIDE mark, its intention to sell beer under the SLOW RIDE mark, and its willingness to discuss entering a mutual agreement that would

allow the parties to both sell beers under the SLOW RIDE mark subject to certain terms and conditions. Docket #1-4.

8.      In a responsive letter dated December 1, 2014, TCBC declined New Belgium's offer to negotiate a mutual agreement and reiterated its cease and desist demands. TCBC also repeated that it "made substantial marketing efforts and commercial activity all across Texas and even outside of Texas before New Belgium filed its US trademark application. TCBC's trademark rights therefore extend to more than just 'certain cities in Texas' but instead extend to all of Texas and even outside of Texas, including Colorado." Docket #1-5.

9.      New Belgium replied suggesting that principals of the parties meet face to face. TCBC agreed to meet in person and offered to host the event at its brewery in Austin, Texas. The meeting between the parties took place on December 9, 2014. The parties were unable to resolve the matter during the meeting, and TCBC representatives at the meeting reiterated its demand that New Belgium cease and desist from its continued use of the SLOW RIDE mark or face legal action.

10.     TCBC was not served in Colorado with the Summons and Complaint and has not consented to the exercise of personal jurisdiction in Colorado.

11.     TCBC does not advertise or have any bank accounts in Colorado, but does maintain a passive website that is viewable anywhere there is an internet connection; however, the website is not an interactive merchant website through which a resident of Colorado could purchase alcohol or merchandise.

12.     TCBC owns no property in Colorado, has no employees or offices in Colorado, and is not licensed to conduct business in Colorado.

13.     The events surrounding New Belgium's decisions to apply for and use the SLOW RIDE

trademarks occurred in Colorado.

14. New Belgium anticipates identifying witnesses to testify in this matter who reside in Colorado, including Kim Jordan.

15. New Belgium's evidence regarding its application for, registration of, and use of the SLOW RIDE trademark is located in Colorado.

16. New Belgium's evidence regarding TCBC's challenge of the scope of New Belgium's property rights is located in Colorado, including the two cease-and-desist letters sent by TCBC to New Belgium.

17. New Belgium's evidence regarding its actions taken in response to TCBC's threatened trademark infringement lawsuit is located in Colorado.

## LEGAL STANDARDS

### I. Fed. R. Civ. P. 12(b)(2)

"Where, as in the present case, there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

> The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party. However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true.

*Wenz*, 55 F.3d at 1505 (citations and internal quotation marks omitted). "[T]o defeat a plaintiff's

prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable." *OMI Holdings, Inc.*, 149 F.3d at 1091 (citation and internal quotations omitted).

"Jurisdiction to resolve cases on the merits requires ... authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)). In a federal question case, the federal court must determine "(1) 'whether the applicable statute potentially confers jurisdiction' by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process.'" *Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000) (citation omitted). As there is no federal statute authorizing nationwide personal jurisdiction in this case, Fed. R. Civ. P. 4(k)(1)(A) refers to the Colorado long-arm statute. In Colorado, only one inquiry is necessary, as the Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124(1), "confer[s] the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions," and its requirements are necessarily addressed under a due process analysis. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005) (en banc).

**II.     Fed. R. Civ. P. 12(b)(3)**

Pursuant to 28 U.S.C. § 1391(b), a civil action may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in

this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

"Once venue is attacked, the plaintiff bears the burden to show proper venue." *Ervin & Assocs., Inc. v. Cisneros*, 939 F. Supp. 793, 796 (D. Colo. 1996) (citation omitted). However, the plaintiff need only make a *prima facie* showing that venue is proper. *JD Parker Constr., Inc. v. E. Equity Partners, L.L.C.*, No. 08-cv-01392-LTB, 2009 WL 151491, at *3 (D. Colo. Jan. 22, 2009). In reviewing a Rule 12(b)(3) motion to dismiss for improper venue, the Court "may examine facts outside the complaint," and "it must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1260-61 (10th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1352, at 324 (2004)). Specifically, the Court must accept the well-pleaded allegations of the complaint as true to the extent that they are uncontested by the defendant's affidavits. *Id.*

## ANALYSIS

In this case, TCBC contends that New Belgium has not, and cannot, establish this Court's personal jurisdiction through its Complaint's well-pled allegations and declaration. Additionally, TCBC argues New Belgium has failed to establish proper venue of this matter.

### I. Personal Jurisdiction

When evaluating personal jurisdiction under the due process clause, the Tenth Circuit conducts a two-step analysis. At the first step, the court examines "whether the non-resident defendant has 'minimum contacts' with the forum state such 'that he should reasonably anticipate being haled into court there.'" *TH Agric. & Nutrition, LLC v. Ace European Grp., Ltd.,* 488 F.3d 1282, 1287 (10th Cir. 2007) (citations omitted). If the defendant has sufficient contacts, the court then asks whether "exercise of jurisdiction over the defendant offends 'traditional notions of fair

play and substantial justice,'" that is, whether the exercise of jurisdiction is "reasonable" under the circumstances of a given case. *Id.* (citations omitted). "This analysis is fact specific." *ClearOne Commc'ns., Inc. v. Bowers*, 643 F.3d 735, 763 (10th Cir. 2011) (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010)).

The "minimum contacts" test may be met pursuant to either of two ways – general jurisdiction or specific jurisdiction. First, if a defendant has "continuous and systematic general business contacts" with the forum state, it may be subjected to the general jurisdiction of the forum state's courts. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416 (1984). Second, even in the absence of "continuous and systematic" contacts, a state's courts may exercise specific jurisdiction over a defendant that "purposefully directed" its activities at the state's residents, if the cause of action arises out of those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985); *see also Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004) ("A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum, and the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state.") (internal quotation marks and citation omitted).

In addition to examining the defendant's minimum contacts with Colorado, the Court must analyze whether the exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice" in this case. *ClearOne Commc'ns., Inc.*, 643 F.3d at 764. This inquiry requires a determination of whether personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case. *Id.* In assessing reasonableness, a court considers: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate

judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.*

      A.     <u>Minimum Contacts</u>

Here, New Belgium asserts this Court's specific (as opposed to general) personal jurisdiction over TCBC.

"Under the specific-jurisdiction requirement, a plaintiff satisfies the minimum-contacts standard by showing that (1) the defendant has purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state, and (2) the litigation results from the alleged injuries that arise out of or relate to those activities." *Bartile Roofs, Inc.*, 618 F.3d at 1160. "Specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, -- U.S. -- , 131 S.Ct. 2846, 2851 (2011).

The Supreme Court recently re-articulated the criteria for establishing specific jurisdiction. *See Walden v. Fiore*, -- U.S. --, 134 S. Ct. 1115 (2014). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Id.* at 1121 (quoting *Keeton*, 465 U.S. at 775). The "defendant's suit-related conduct must create a substantial connection with the forum state," and "the relationship must arise out of contacts that the defendant *himself* creates with the forum State"... with the "minimum contacts analysis look[ing] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 1121-22 (citing *Burger King*, 471 U.S. at 475 and *Int'l Shoe Co. v. State of Wa.*, 326 U.S. 310, 319 (1945)) (emphasis in original). The "plaintiff cannot be the only link between the defendant and the forum. Rather, it is

the defendant's conduct that must form the necessary connections with the forum State" to support the basis for specific jurisdiction. *Id.* at 1122-23 (citing *Burger King*, 471 U.S. at 478).

Initially, the Court notes that it might be enticed to follow the Tenth Circuit's opinion in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008) for analysis of the present motion. In *Dudnikov*, the plaintiffs sought a judicial declaration that their fabrics did not infringe the defendant's copyrights, and the defendants responded with a motion to dismiss for lack of personal jurisdiction. *Id.* at 1068. However, in that case, the plaintiffs specifically relied on the Supreme Court's opinion in *Calder v. Jones*, 465 U.S. 783 (1984) for support of their argument in favor of personal jurisdiction. In *Calder*, the Court concluded that the defendant's "intentional, and allegedly tortious, actions were expressly aimed at California." *Id.* at 789. Accordingly, the *Dudnikov* court interpreted *Calder* to provide a means of demonstrating purposeful direction (also known as "purposeful availment") through "(a) an intentional action ... that was (b) expressly aimed at the forum state ... with (c) knowledge that the brunt of the injury would be felt in the forum state." *Dudnikov*, 514 F.3d at 1072. Although it appears the case was not a tort action and sought only declaratory relief, the *Dudnikov* court accepted the plaintiffs' allegation that defendant acted to halt an eBay auction of the plaintiffs' fabrics as sufficient to meet element (a). *Id.*

Importantly, the Tenth Circuit in *Dudnikov* noted, "... we do not imagine that *Calder* necessarily describes the ***only*** way to satisfy the purposeful direction test ...." *Id.* at 1071 (emphasis added). In fact, in this case, New Belgium emphatically argues that this case is not an infringement (tort) action but, rather, a simple request for declaratory relief. Unlike in *Dudnikov*, New Belgium does not allege any intentional action by TCBC that has harmed New Belgium and from which this action arises. Rather, New Belgium asserts that TCBC purposefully directed its activities at

Colorado when TCBC addressed two cease-and-desist letters to New Belgium and participated in a beer festival/competition in Colorado. Plaintiff relies for its argument on the Supreme Court's opinion in *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102 (1987).[1]

In *Asahi*, the Court analyzed whether a tire valve manufacturer's intentional act of placing its assemblies into the stream of commerce by selling them to tire manufacturers, coupled with its awareness that some of the assemblies would eventually reach the forum state, were sufficient to support personal jurisdiction. The Court concluded:

> The "substantial connection" between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State. The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. *Additional conduct of the defendant* may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Id.* at 112 (emphasis added). Although not specific, New Belgium apparently argues that TCBC's act of participating in the beer festival suffices as the "additional conduct" that "indicate[s] an intent or purpose to serve the market in the forum State." More specifically, TCBC's admissions that it "heavily markets SLOW RIDE nationwide through the TCBC Brewing Company website ..., beer festival competitions, and other activities," and "made substantial marketing efforts and commercial

---

[1] Plaintiff also cited the Tenth Circuit's opinion in *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270 (10th Cir. 2005); however, this Court finds the case distinguishable for a "purposeful direction" analysis in this case because the *Pro Axess* court focused on the contractual relationship between the parties for its personal jurisdiction determination. *Id.* at 1277-78.

11

activity all across Texas and even outside of Texas before New Belgium filed its US trademark application. TCBC's trademark rights therefore extend to more than just 'certain cities in Texas' but instead extend to all of Texas and even outside of Texas, including Colorado," coupled with TCBC's participation and, apparently, its marketing at the Great American Beer Festival in Colorado in 2014, demonstrate purposeful direction at the forum state in this case.

Assuming without deciding that this argument meets the "purposeful direction" element, New Belgium fails to meet the other half of its burden in this respect: that "the litigation results from the alleged injuries that arise out of or relate to those activities." *See Bartile Roofs, Inc.*, 618 F.3d at 1160. Here, New Belgium's allegations regarding the Colorado festival mention nothing about TCBC marketing its "Slow Ride" beer there or that New Belgium learned about TCBC's use of the "Slow Ride" mark as a result of TCBC's participation in the festival. *See* Complaint, ¶ 21. In fact, New Belgium specifically alleges, "[t]his case arises from [TCBC's] assertion that New Belgium's use of its federally-registered trademark SLOW RIDE in connection with beer infringes upon [TCBC]'s alleged common law rights in the same trademark. TCBC has demanded that New Belgium cease and desist from further use of its SLOW RIDE mark and has threatened to enforce its right through legal action. ... New Belgium now brings this action to resolve the claims asserted by TCBC and to establish New Belgium's exclusive, nationwide rights in the SLOW RIDE mark." *Id.*, ¶ 1.[2]

Accordingly, to successfully establish this Court's personal jurisdiction over TCBC, New

---

[2] New Belgium does not argue that this Court has general personal jurisdiction over TCBC; however, even if it did, the Court would find TCBC's participation at the beer festival to be insufficient "continuous and systematic general business contacts" with Colorado. *Hall*, 466 U.S. at 416.

Belgium must demonstrate that the cease-and-desist letters, from which this litigation arises, "create a substantial connection with the forum state." *Walden*, 134 S. Ct. at 1121-22. New Belgium argues that TCBC not only addressed the letters to it in Colorado, but also threatened litigation and made the statements (referenced above) that TCBC's intellectual property rights extend "to all of Texas and even outside of Texas, including Colorado."

Senior Judge Wiley Y. Daniel in this district addressed the issue in a substantially similar case, *Fusion Entm't v. Josh Agle, Inc.*, No. 07-cv-01651-WYD, 2008 WL 140489 (D. Colo. Jan. 11, 2008). There, the plaintiffs, Colorado corporations, sought a declaratory judgment that they had not infringed on the defendant's alleged copyright and trademarks, after having received a cease-and-desist letter from defense counsel alleging violations of the defendant's intellectual property rights and threatening litigation. *Id.* at *1. Defendant, a California corporation, moved to dismiss the action for lack of personal jurisdiction. *Id.* Judge Daniel concluded:

> Plaintiffs also cannot establish personal jurisdiction by the simple fact that Defendant has common law trademark or other intellectual property rights in this state. Courts have held that owning intellectual property rights and sending cease and desist letters into a state in connection with same are not sufficient to establish a basis for personal jurisdiction. *Some additional act* of purposeful availment is required of the holder of the intellectual property rights.

*Id.* at *5 (citations omitted) (emphasis added). In so concluding, Judge Daniel cited decisions by the Supreme Court and by the Federal Circuit, which governs patent cases. Similarly, in *Dudnikov*, the Tenth Circuit cited the Federal Circuit's opinion that a cease-and-desist letter cannot establish a basis for personal jurisdiction because, in the interests of fairness and justice, a patent holder should not "subject itself to personal jurisdiction in a forum *solely by informing* a party who happens to be located there of suspected infringement." *See Dudnikov*, 514 F.3d at 1082 (quoting *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998)) (emphasis in

original).

In these cases and in those following *Red Wing Shoe*, courts have determined that personal jurisdiction over a nonresident defendant cannot rest on cease-and-desist letters alone, but "some additional act of purposeful availment is required of the holder of the intellectual property rights." *Fusion Entm't*, 2008 WL 140489, at *5. Again, New Belgium appears to argue TCBC's admissions that it markets "Slow Ride" beer nationwide and that its rights extend outside of Texas, including to Colorado, demonstrate TCBC's additional act of purposeful direction from which this litigation arises. However, as the Plaintiffs assert, this is not an infringement action but a declaratory judgment action. As such, TCBC's "admissions" in its cease-and-desist letters are simply meant to inform New Belgium of its potential intellectual property rights. The Court finds instructive the Federal Circuit's opinion in *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324 (Fed. Cir. 2008), in which the court concluded:

> Thus, the nature of the claim in a declaratory judgment action is "to clear the air of infringement charges." Such a claim neither directly arises out of nor relates to the making, using, offering to sell, selling, or importing of arguably infringing products in the forum, but instead arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit. The relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee "purposefully directed [such enforcement activities] at residents of the forum," and the extent to which the declaratory judgment claim "arises out of or relates to those activities."

*Id.* at 1332 (citations omitted). The following year, the Federal Circuit clarified its *Avocent* findings by holding that "only enforcement or defense efforts related to the patent rather than the patentee's own commercialization efforts are to be considered for establishing specific personal jurisdiction in a declaratory judgment action against the patentee." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1020 (Fed. Cir. 2009). Based upon these persuasive opinions, the Court finds

that TCBC's cease-and-desist letters, which include notification of TCBC's alleged intellectual property rights and threats of litigation, are insufficient to serve as minimum contacts necessary for this Court's personal jurisdiction over TCBC.

### B. Fair Play and Substantial Justice

Having determined that New Belgium has not met its burden to establish TCBC's minimum contacts with Colorado, the Court need not proceed, but nevertheless concludes that the exercise of personal jurisdiction over TCBC would be unreasonable.

A determination of whether the exercise of jurisdiction is so unreasonable as to violate fair play and substantial justice requires an analysis of the five factors set forth in *ClearOne Commc'ns., supra*: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.* at 764. "The reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need showing terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts]." *Benton*, 375 F.3d at 1079 (citing *OMI Holdings, Inc.*, 149 F.3d at 1092).

With respect to the first factor, TCBC argues it is based in Austin, Texas, owns no property, has no employees and is not licensed to do business in Colorado, uses its mark in Texas, and "it would be extremely difficult and costly for defendant to travel across the country from Texas to Colorado in order to participate in the litigation." Motion, docket #15 at 7. In *Benton*, the Tenth

15

Circuit found the burden on a Canadian defendant to be "significant" considering the company had its principal office in Canada, no office or property in Colorado, no employees in Colorado and was not licensed to do business in Colorado. *Id.* Likewise, Bernardo Ivo Schleder, Managing Member of TCBC, attests:

> 6. Defendant does not regularly send agents into Colorado to solicit business.
>
> 7. Defendant does not hold itself out as doing business in Colorado.
>
> 8. Defendant does not advertise or have any bank accounts in Colorado.
>
> 9. Defendant does maintain a passive website that is viewable anywhere that has an internet connection, but it is not an interactive merchant website through which a resident of Colorado could purchase alcohol or merchandise.
>
> 10. Defendant owns no property in Colorado.
>
> 11. Defendant has no employees or offices in Colorado, and is not licensed to conduct business in Colorado.

Schleder Declaration, ¶¶ 5-11, docket #15-1. New Belgium does not dispute these statements. Considering its statements and TCBC's nature as a company doing business in Texas, the Court finds that TCBC would suffer a burden by litigating New Belgium's claim in Colorado and weighs the first factor against finding personal jurisdiction reasonable.

Second, New Belgium contends that Colorado has a "substantial interest in resolving this dispute." Response, docket #18 at 10-11. While this is may be true, "[t]he state's interest is also implicated where resolution of the dispute requires a general application of the forum state's laws." *Benton*, 375 F.3d at 1079. Here, New Belgium is a Colorado resident, but the law to be applied in this action is federal law.[3] Accordingly, this second factor weighs neutrally in favor of neither party.

---

[3]The operative pleading does not identify the substantive law to be applied in this case; however, because the Plaintiff asserts that the Court has federal question jurisdiction (28 U.S.C. §

The third factor "hinges on whether the Plaintiff may receive convenient and effective relief in another forum. This factor may weigh heavily in cases where a plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit." *Id.* In this case, there is no argument that New Belgium would not receive effective relief with the application of federal law by a federal court in Texas. *See Benton*, 375 F.3d at 1079. Although it is certainly less convenient for New Belgium to litigate the action in Texas, New Belgium has already demonstrated its ability and willingness to travel to Austin, Texas to work with TCBC in an effort to resolve the case's issues. Accordingly, the Court finds the third factor weighs slightly against finding this Court's jurisdiction reasonable.

The fourth factor "asks 'whether the forum state is the most efficient place to litigate the dispute.' Key to the inquiry are the location of witnesses, where the wrong underlying the suit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *Id.* at 1080 (internal quotation marks and citation omitted). Schleder attests "[i]t is my belief that the majority of, if not all, witnesses and evidence regarding Defendant's usage of the Slow Ride mark are all located outside Colorado, namely in Texas." Schleder Declaration, ¶ 12, docket #15-1. While this may be true, New Belgium's request for relief seeks a declaratory judgment not only that "Defendant has no claim of priority in the mark," but also that

---

1331) and original jurisdiction over the determination of trademark rights (28 U.S.C. § 1338(a)), the Court construes the pleading as invoking federal substantive law. *See Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978) (the Declaratory Judgment Act "does not create substantive rights; it merely provides another procedure whereby parties may obtain judicial relief").

"New Belgium is the sole owner of the trademark SLOW RIDE for beer." Complaint, docket #1 at 12. Kim Jordan attests that "[t]he events surrounding New Belgium's decisions to apply for and use the SLOW RIDE trademarks occurred in Colorado." Jordan Declaration, ¶ 5, docket #18-11. Consequently, this fourth factor weighs neutrally in favor of neither party.

The fifth factor "focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations." Neither party addressed this factor and the Court finds no basis to conclude that its jurisdiction over TCBC would affect any "substantive social policy interests" of Texas. Thus, the Court must conclude that this fifth factor weighs neutrally in favor of neither party.

In weighing the required factors, the Court finds the scale tips slightly toward the conclusion that personal jurisdiction over TCBC would be unreasonable in light of the circumstances in this case and would offend traditional notions of fair play and substantial justice. That, coupled with the Court's finding that New Belgium has not demonstrated minimum contacts by TCBC with Colorado sufficient to satisfy jurisdictional standards, prompts the Court to find that TCBC's motion to dismiss must be granted.

## II.    Transfer of Venue

As the Court has determined it may not exercise personal jurisdiction over TCBC, the next step is to consider whether to transfer the case prior to dismissal pursuant to 28 U.S.C. § 1631. *Trujillo v. Williams*, 465 F.3d 1210, 1222-23 (10th Cir. 2006); *Arocho v. Nafziger*, 367 F. App'x 942, 951 n.10 (10th Cir. 2010) (dismissal of an action for lack of personal jurisdiction "without an evaluation of whether justice warranted, rather, a transfer under 28 U.S.C. § 1631 would require a remand for consideration of that alternative."). Section 1631 directs that when a court "finds that

there is want of jurisdiction, the court shall, if it is in the interest of justice, transfer [the] action" to any other court in which the action could have been brought at the time it was filed or noticed. The Tenth Circuit has interpreted Section 1631 to grant district courts "discretion in making a decision to transfer an action or instead to dismiss the action without prejudice." *Trujillo*, 465 F.3d at 1222–23 (citing *United States v. Botefuhr*, 309 F.3d 1263, 1274 n.8 (10th Cir. 2002)).  When deciding whether to transfer or dismiss an action, the Court should consider the following factors: (1) whether "the new action would be time barred"; (2) whether "the claims are likely to have merit"; and (3) whether "the original action was filed in good faith rather than filed after plaintiff either realized or should have realized that the forum in which he or she filed was improper." *Id.* at 1223 n.16 (citations and internal quotations omitted).

Here, the Court finds that, under the circumstances of this case in which TCBC requests transfer *in the alternative* to dismissal, and New Belgium strongly opposes such request, the Court in its discretion will deny transfer of the case.  While a cursory consideration of the *Trujillo* factors demonstrates transfer may be appropriate, the Court concludes that justice requires New Belgium be provided the opportunity to decide whether to re-file its complaint in Texas.

## CONCLUSION

Plaintiff, New Belgium Brewing Company, Inc. has not met its burden of demonstrating this Court's personal jurisdiction over Defendant, Travis County Brewing Co., d/b/a Oasis Texas Brewing Co. and, further, the imposition of personal jurisdiction over TCBC would be unreasonable. Accordingly, Defendant's Motion to Dismiss or, Alternatively, to Transfer Venue [filed March 27, 2015; docket #15] is **GRANTED** as to TCBC's request to dismiss this case for lack of personal jurisdiction and **DENIED** as to TCBC's alternative request to transfer venue.  New Belgium's

complaint is dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(2).

DATED this 1st day of May, 2015, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge